UNITED STATES v. WESTERN & A. R. CO.

(District Court, N. D. Georgia. December 1, 1910.)

1. RAILROADS (§ 229*)—REGULATION—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT—APPLICATION—"CONNECTION THEREWITH."

Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act Cong. April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1143), declares that it shall apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce. and to all other locomotives, tenders, cars, and similar vehicles used in "connection therewith." *Held* that, where a car not properly equipped is moved in a train containing cars carrying interstate commerce, there is a violation of the act, notwithstanding the defective car is not immediately connected with that carrying the interstate shipment.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 2, pp. 1432–1434.

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. S.]

2. RAILROADS (§ 229*)—REGULATION—SAFETY APPLIANCE ACT—VIOLATION—TERMINATION OF CARRIAGE.

A declaration against a railroad company for violating Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act April 1, 1896, c. 87, 29 Stat. 85,, and Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1143), alleging that on a specified date defendant hauled a certain car with a defective coupler, so that it could not be coupled by impact, "in and around Atlanta in the state of Georgia," was not demurrable as showing that the interstate shipment had already reached its destination, under the rule that whenever a car is loaded in one state with a commodity which is destined for another state, and begins to move, interstate commerce is begun, and does not cease until the car has arrived at its point of final destination.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*]

Action by the United States of America against the Western & Atlantic Railroad Company to recover a penalty for a violation of the safety appliance act. Demurrer to the declaration. Overruled.

F. C. Tate, U. S. Atty., and Jno. W. Henley, Asst. U. S. Atty. Tye, Peeples & Jordan, for defendant.

NEWMAN, District Judge. This is a suit under the safety appliance act. The declaration, after certain formalities, proceeds as follows:

"That said defendant is a common carrier engaged in interstate commerce by railroad among the several states and territories of the United States, particularly the states of Tennessee and Georgia. Plaintiff further alleges that in violation of the act of Congress known as the 'Safety Appliance Act,' approved March 2, 1893 (contained in 27 Statutes at Large, p. 531), as amended by an act approved April 1, 1896 (contained in 29 Statutes at Large, p. 85), and as amended by an act approved March 2, 1903 (contained in 32 Statutes at Large, p. 943), said defendant on April 17, 1909, hauled on its line of railroad one car, to wit, S. A. L. 30309, said car being one regularly used in the movement of interstate traffic, but at the time of said violation being

empty and hauled in a train containing interstate traffic, one car in said train, to wit, P. F. W. & C. Ry. 823210, containing pipe consigned from Richmond, in the state of Virginia, to Atlanta, in the state of Georgia. Plaintiff further alleges that on said date defendant hauled said car S. A. L. 30309, as aforesaid, over its line of railroad in and about Atlanta, in the state of Georgia, within the jurisdiction of this court when the coupling and uncoupling apparatus on the 'B' end of said car was out of repair and inoperative, the chain connecting the lock pin or lock block to the uncoupling lever being broken on said end of said car, and the eye bolt being broken off of the lock block on the said end of said car, thus necessitating a man or men going between the ends of the cars to couple or uncouple them, and when said car was not equipped with couplers coupling automatically by impact, and which could be uncoupled without the necessity of a man or men going between the ends of the cars, as required by section 2 of the safety appliance act, as amended by section 1 of the act of March 2, 1903."

Then follows the claim that defendant is liable in the sum of $100, and a prayer for judgment. To this declaration a demurrer was interposed, which, as developed on argument, makes two points: First, that the declaration fails to show that the car containing interstate commerce was immediately connected with—that is, next in—the train of cars to the one on which it is alleged there was a defective appliance.

The intent of the amendatory act of 1903 (Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1909, p. 1143]) is that Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended in 1896 (Act April 1, 1896, c. 87, 29 Stat. 85), "shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce and in the territories or the District of Columbia, and to all other locomotives, tenders, cars and similar vehicles used in connection therewith." It seems perfectly clear to me, and such, I think, is the effect of all decisions that have been rendered, that it is immaterial whether the car which is engaged in interstate commerce, carrying an interstate shipment, is immediately connected with the car having the defective appliance or not, so long as it is in the same train of cars. This is clearly alleged in this declaration.

In United States v. Railroad Co., 174 Fed. 638, 98 C. C. A. 392, decided by the Circuit Court of Appeals for this Circuit, Judge Shelby, in delivering the opinion of the court, says:

"The effect of the amendment (act of 1893) is to apply the provisions and requirements of the act to all cars used on any railroad engaged in interstate commerce and to all other cars used in connection therewith. If it is so used it makes no difference if the defective car was empty or how it was loaded at the time. The act, as amended, applies to all cars and trains operated by a railroad carrier of interstate commerce over an interstate railway, irrespective of whether the defective car is being hauled from one point to another in the same state or not; it being part of a train engaged in interstate commerce."

The next point is that the interstate shipment contained in car P. F. W. & C. Ry., 823210, was consigned from Richmond, in the state of Virginia, to Atlanta, in the state of Georgia, and, according to the declaration, it had already reached its destination. The meaning of the declaration would seem to be that the train in question was passing through or around Atlanta, and presumably being

184 F.—22

switched from one railroad yard to another in order to be delivered at its final destination. This being true, and if the interstate shipment had not reached its final destination, it would come within the safety appliance act.

Judge Brawley, in charging the jury in United States v. Atlantic C. L. R. Co., in the District Court in South Carolina, used this language (Kent's Index-Digest of Decisions Under the Federal Safety Appliance Act, Appendix, 267):

"Wherever a car is loaded in one state of the Union with a commodity which is destined for another state, and begins to move, then interstate commerce has begun, and does not cease till the car has arrived at its point of final destination."

In his charge Judge Brawley cites the charge of Judge Landis to the jury in United States v. Belt Ry. Co., in the District Court for the Northern District of Illinois (Kent's Index-Digest of Decisions Under the Federal Safety Appliance Act, Appendix, 244). In the latter case Judge Landis says this:

"If, therefore, between the point of origin of this shipment and the point of destination, the car in which it is being vehicled passes over a line of track wholly within a city, within a county, within a state, the railway company operating that line of track while moving such car is engaged in interstate commerce."

I think that the declaration is sufficient, and that the demurrer upon both points should be overruled, and it is so ordered